Matthew R. Lewis (7919)
Taylor J. Hadfield (17224)
**KUNZLER BEAN & ADAMSON, PC**
50 West Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
Facsimile: (801) 531-1929
mlewis@kba.law
thadfield@kba.law

*Attorneys for Defendant Phillip Gannuscia*

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>APRIL GREN BAWDEN,<br>CHAD AUSTIN BAWDEN,<br>MAKAIO LYMAN CRISLER,<br>PHILLIP GANNUSCIA,<br>DUSTIN GARR,<br>BARBARA JO JACKSON,<br>BRENT GOLDBURN KNUDSON,<br>ROBERT MCKINLEY, and<br>RICHARD SCOTT NEMROW,<br><br>    Defendants. | **DEFENDANT PHILLIP GANNUSCIA'S OPPOSITION TO GOVERNMENT'S POSITION REGARDING DETENTION**<br><br>Case No. 2:22-cr-00481-CW<br><br>Judge Clark Waddoups<br>Chief Magistrate Judge Dustin Pead |

Defendant Phillip Gannuscia respectfully submits this Opposition to Government's Position Regarding Detention ("Gov. Position") and requests that Mr. Gannuscia be released with conditions pending trial in this matter. The Bail Reform Act, 18 U.S.C. § 3142, requires a bail hearing the case of certain offenses enumerated in subsection (f)(1), which the Government

concedes are not alleged in this case. Because these offenses are not involved in this case, the Government must allege and provide evidence that there is a serious risk that defendant will flee or obstruct justice as a prerequisite to even receiving a bail hearing. The Government has not met its burden of demonstrating a serious risk of flight or obstruction by Mr. Gannuscia and therefore Mr. Gannuscia should be released without even conducting a detention hearing to consider the Government's request for detention.

The Bail Reform Act creates a presumption of release pending trial (except in certain enumerated cases) and, if a detention hearing is conducted, requires the Government to prove by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community or by a preponderance of evidence that no condition or combination of conditions will reasonably assure the defendant's appearance as required." 18 U.S.C. § 3142(c)(1)(B). As the Pretrial Services Report ("PSR") in this matter indicates, there are no known factors indicating that Mr. Gannuscia poses a risk of nonappearance or a risk of danger to the community (let alone a "serious risk", as required). Mr. Gannuscia was born and raised in Utah, has strong family ties here (including his adult daughter, uncle and his wife's extended family), has a stable place to live, and is willing to find full-time employment. Mr. Gannuscia also has no criminal history.

Mr. Gannuscia has also already demonstrated in this case that he is not a flight risk attempting to surrender to authorities in Puerto Rico, as instructed by the Government, and then self-surrendering in Utah. The Government does not argue that he is a danger to the community, because he is not. Moreover, contrary to the Government's assertions to the contrary, the prior FTC case against Mr. Gannuscia, which was vigorously contested before defendants ran out of

funds and settled with no admission of wrongdoing and full payment to the FTC, demonstrates that he will appear and fight the charges in this matter.

The nature of this case further supports release. As the Government concedes, the allegations are non-violent and do not create a presumption of detention. Moreover, the Government has already disclosed that the case involves a massive amount of discovery and has requested a delay of the trial in this matter. Given the amount of discovery and the number of defendants, this case could take months or years to reach trial. Detaining Mr. Gannuscia for this length of time should require compelling evidence of risk of flight or danger that simply does not exist in this case. It is also already clear that Mr. Gannuscia's assistance with be required to effectively prepare for trial in this matter and there is no feasible method for him to review the discovery and effectively participate in his own defense if he is incarcerated pending trial.

Mr. Gannuscia is also willing to abide by terms and conditions placed upon him by this Court, including surrendering his passport and the other special conditions imposed on co-defendants in this matter, which would eliminate any risk of non-appearance or any potential danger to the community. Accordingly, Mr. Gannuscia respectfully requests that the Court release him pending trial in this matter with special conditions.

## FACTS

1.  Mr. Gannuscia was born and raised in Salt Lake City, Utah. He graduated from Jordan High School. PSR at 2, 3. He is currently 52 years old. *Id.* at 2.

2.  Mr. Gannuscia is married and has a daughter who lives in Utah. *Id.* Mr. Gannuscia has other strong family ties to Utah, including an uncle who is like a second father to him as well as his wife's extended family. *Id.* at 2-3.

3. Mr. Gannuscia has rented a home in Herriman, Utah since 2012. *Id.* at 3. His wife currently resides in this home, and Mr. Gannuscia would reside there upon release. *Id.*

4. Mr. Gannuscia has no prior criminal history. *Id.*

5. In 2019, Mr. Gannuscia was diagnosed with a serious neurological condition called Trigeminal Neuralgia,[1] which caused him to stop working for a significant period of time.

6. The disease is now in remission but it can and has flared up unexpectedly, especially in times of stress. When the disease flares up, it causes severe pain in the face and neck that can be incapacitating. The disease is very difficult to treat, but doctors generally attempt to manage the effects using pain killers such as Lyrica, which is used to treat pain caused by nerve damage. The medical staff at Weber County Jail has indicated that they are not equipped to effectively treat this condition if it flares up and that they would not be able to administer Lyrica to Mr. Gannuscia in such an instance and that he would have to wait for paramedics to attempt to administer liquid Lyrica, if they have it. For these reasons, the jail staff has indicated that the condition could be more effectively managed at home.

---

[1] Trigeminal neuralgia (TN), also called *tic douloureux*, is a chronic pain condition that affects the trigeminal or 5th cranial nerve, one of the most widely distributed nerves in the head. TN is a form of neuropathic pain (pain associated with nerve injury or nerve lesion.) The typical or "classic" form of the disorder (called "Type 1" or TN1) causes extreme, sporadic, sudden burning or shock-like facial pain that lasts anywhere from a few seconds to as long as two minutes per episode. These attacks can occur in quick succession, in volleys lasting as long as two hours. The "atypical" form of the disorder (called "Type 2" or TN2), is characterized by constant aching, burning, stabbing pain of somewhat lower intensity than Type 1. Both forms of pain may occur in the same person, sometimes at the same time. The intensity of pain can be physically and mentally incapacitating. (https://www.ninds.nih.gov/trigeminal-neuralgia-fact-sheet#:~:text=Trigeminal%20neuralgia%20(TN)%2C%20also,nerve%20injury%20or%20nerve%20lesion.)

7. The PSR gives Mr. Gannuscia a PTRA Risk Score of 1. This score predicts that there is less than a 1 percent chance that Mr. Gannuscia will fail to appear and a less than 1 percent chance that he will have a new criminal arrest. Pretrial Services Report at 4.

8. During the past year, due in large part to his wife's medical condition, Mr. Gannuscia has been in the process of transitioning his residency from Utah to Puerto Rico. Becoming a *bona fide* resident of Puerto Rico requires that Mr. Gannuscia and his wife live there at least 183 days during the year, obtain a Puerto Rican driver's license, and register to vote, among other things. Mr. Gannuscia was in the process of completing these requirements with a plan to declare *bona fide* residence in Puerto Rico for the 2022 tax year.[2]

9. On December 7, 2022, while Mr. Gannuscia was in Puerto Rico, the United States filed the sealed indictment in this matter. *See* Dkt. 1.

10. On December 8, 2022, the United States executed arrest warrants on several named defendants and seized property at Mr. Gannuscia's Utah residence. *See* Dkt. at 7-8, 21-23.

11. As a result of these actions, Mr. Gannuscia learned about the sealed indictment in this matter and reached out to undersigned counsel regarding same.

12. In light of the non-violent nature of the offense, Mr. Gannuscia's strong ties to Utah, and his lack of criminal history, as well as his clear intent to appear and defend this matter, undersigned counsel requested that counsel for the United States agree to move to withdraw the pending warrant and allow Mr. Gannuscia to return to Utah and self-surrender.

---

[2] Due to the filing of this case, this will likely not be possible as Mr. Gannuscia plans to remain in Utah and will not have resided in Puerto Rico for the required 183 days this year.

13.     Counsel for the United States denied that request and insisted that Mr. Gannuscia report to MDC Guaynabo, a federal facility in San Juan, Puerto Rico.

14.     Mr. Gannuscia then attempted to contact MDC Guaynabo by phone but was unable to obtain any information about how to report there.  Undersigned counsel then followed up with counsel for the United States and requested any additional information regarding how Mr. Gannuscia should go about surrendering. Counsel for the United States was unable to provide any additional information about how Mr. Gannuscia should report but reaffirmed that he should report to MDC Guaynabo.

15.     Mr. Gannuscia drove 2.5 hours from the home he was renting in Puerto Rico to San Juan to report at MDC Guaynabo, as directed.  Upon arriving at the facility, Mr. Gannuscia was informed by agents staffing the facility that they could not find an arrest warrant or other information about him in the NCIC or other systems and that they could not take him into custody.  They also advised him that he had to leave the facility.  The agents at MDC Guaynabo suggested that Mr. Gannuscia try to surrender at a local jail.

16.     Mr. Gannuscia then reported to two other local jails in San Juan in an effort to turn himself in.  At both facilities, Mr. Gannuscia was informed by agents that they could not locate an arrest warrant or other information and that he could not be arrested or admitted to the facilities.

17.     Agents at the facilities also indicated that it would be very unsafe for Mr. Gannuscia to surrender at a Puerto Rican facility and that it would likely take a month or more to transport him from San Juan back to Utah.

18. Undersigned counsel spoke with one agent at one of these facilities who was part of the extradition team. Undersigned counsel provided all known details about this case (which remained under seal at the time). The agent re-confirmed to counsel that he could not take Mr. Gannuscia into custody and that Mr. Gannuscia could not remain at the facility. The agent also advised counsel that the jails in Puerto Rico may not be safe for Mr. Gannuscia and that it would take at least a month to transport him from Puerto Rico to Utah.

19. Mr. Gannuscia was then interviewed by an FBI agent, who reviewed Mr. Gannuscia's driver's license and all of his personal data. This federal agent also indicated that Mr. Gannuscia could not be arrested and processed. The agent also advised Mr. Gannuscia that he could not remain at the facility and directed him to leave.

20. Mr. Gannuscia then flew back to Utah. Undersigned counsel picked him up at the airport and transported him directly to Davis County Jail, where he surrendered. He has been in custody (now at Weber County Jail) since that time.

## LEGAL STANDARD

The Bail Reform Act requires a detention hearing if the case involves the offenses enumerated in § 3142(f)(1), which this case does not. The Government seeks to proceed under § 3142(f)(2). Gov. Position at 2. In order to obtain a detention hearing under this section, the Government must submit a motion demonstrating that Mr. Gannuscia poses a <u>serious</u> risk of flight or a <u>serious</u> risk that he will obstruct justice. *See* 18 U.S.C. § 3142(f) (emphasis added). The proof of the existence of a serious risk of flight or obstruction of justice appears to be a prerequisite to this Court holding a detention hearing.

As this Court is well aware, if a detention hearing is held federal law directs that a defendant should only be detained pending trial if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." 18 U.S.C. § 3142(e). If the Court finds that conditions are warranted, the Court must impose "the least restrictive further condition, or combination of conditions [that] reasonably assure[s] the appearance of the person as required." 18 U.S.C. § 2142(c)(1)(B). The United States has the burden of persuasion by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community or by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. *Id.*; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

When determining whether there are acceptable conditions of release that will assure the appearance of the defendant as well as the safety of the community, the "judicial officer shall . . . take into account the available information concerning" the following factors: (1) the nature of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, past conduct, etc.; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g). A judicial officer may also permit the temporary release of a person in custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason**.**" § 3142(i) (emphasis added).

# ARGUMENT

The factors set forth in 18 U.S.C. S 3142(i) convincingly indicate that Mr. Gannuscia should be released pending trial. The Government cannot meet its high burden of demonstrating by clear and convincing evidence that Mr. Gannuscia is a flight risk or a danger to the community or that any such risks cannot be effectively managed through pretrial conditions.

**I.     Mr. Gannuscia Must Be Released Without a Detention Hearing Because the Government Has Not Alleged a Serious Risk that Mr. Gannuscia Will Flee or Obstruct Justice and the Pretrial Services Report Finds No Known Factors Indicating that Mr. Gannuscia Poses a Risk of Flight or a Risk of Danger to the Community**

Pursuant to 18 U.S.C. § 3142(f)(2), the subsection under which the Government has requested detention, the Government must allege a serious risk of flight or a serious risk that Mr. Gannuscia will obstruct justice as a prerequisite to even holding a detention hearing. The Government has not met this burden and the Court should not even hold a detention hearing to consider detention, but should proceed to impose reasonable and necessary conditions. As set forth in detail below, there is no risk, let alone a serious risk, that Mr. Gannuscia will flee or attempt to obstruct justice.

The PSR indicates that there are "no known factors indicating the defendant poses a risk of danger to the community." *Id.* at 4. Likewise, the PSR concludes that "there are no known factors indicating the defendant poses a risk of danger to the community." *Id.*

The PSR proceeds to give Mr. Gannuscia a PTRA Risk Score of 1. *Id.* "The PTRA is an objective, quantifiable instrument that provides a consistent and valid method of predicting risk of failure to appear, new criminal arrest, and technical violations while on pretrial release." *Id.* A

score of 1, predicts that there is less than a 1 percent chance that Mr. Gannuscia will fail to appear and a less than 1 percent chance that he will have a new criminal arrest. PSR at 4.

Given these facts, the Government has not sufficiently alleged a serious risk that Mr. Gannuscia and a detention hearing is not even warranted.

**II.     A Combination of Conditions Will Reasonably Assure Mr. Gannuscia's Appearance and the Safety of the Community.**

In determining whether any combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court "shall . . . take into account the available information concerning" the following factors: (1) the nature of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, past conduct, etc.; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Each of these factors weigh in favor of release.

    A.     <u>History and Characteristics of Defendant and the Nature and Seriousness of the Danger</u>

           *1. Mr. Gannuscia Has Very Strong Ties to Utah and No Prior Criminal History*

As indicated in the Bail Report, Mr. Gannuscia has very strong ties to Utah. Mr. Gannuscia, who is now 52 years of age, was born and raised in Salt Lake City and has lived here his entire life. Mr. Gannuscia graduated from Jordan High School. His wife, to whom he has been married for 11 years, is also from Utah. He has an adult daughter who lives here, as well as an uncle who is like a second father, and his wife's extended family. He has strong connections with all of them. Mr. Gannuscia and his wife have also lived in a home in Herriman since 2012.

There is no dispute that Mr. Gannuscia has no prior criminal history.

### 2. Mr. Gannuscia Has Serious Health Conditions that Cannot Be Effectively Treated in Jail

In 2019, Mr. Gannuscia was diagnosed with a serious neurological condition called Trigeminal Neuralgia. As indicated above, the disease causes extreme, sporadic, sudden burning or shock-like facial pain. The disease caused him to stop working for a significant period of time. The disease is now in remission but can flare up unexpectedly, especially in times of stress. Doctors attempt to manage pain using pain killers like Lyrica. The medical staff at Weber County Jail has indicated that they are not equipped to effectively treat this condition if it flares up and that they would not be able to administer Lyrica to Mr. Gannuscia in such an instance and that he would have to wait for paramedics to attempt to administer liquid Lyrica, if they have it. For these reasons, the jail staff has indicated that the condition could be more effectively managed at home.

This medical condition, which cannot be effectively treated in jail, weighs in favor of release.

### 3. Employment

As indicated in the Pretrial Services Report, Mr. Gannuscia is willing to seek full-time employment as a condition of release.

### 4. Prior Conduct

Mr. Gannuscia's prior conduct in this very matter demonstrates that he is not a risk of flight. As described above, Mr. Gannuscia was in Puerto Rico when he learned about the indictment in this case. Despite concerns that incarceration in Puerto Rico could threaten his safety and delay the case, Mr. Gannuscia attempted to surrender at MDC Guaynabo, a federal facility in Puerto Rico, as directed by the Government. After he was told that he could not be

arrested and that he had to leave the facility, he then attempted to surrender at two local jails. Each turned him away. In response, he traveled to Utah and self-surrendered to the Davis County Jail. These actions demonstrate that Mr. Gannuscia is not a risk of flight.

The Government baldly asserts that Mr. Gannuscia has blatantly and repeatedly defied a court order, which makes him a flight risk. Gov. Position at 6. The court order to which the Government refers is the permanent injunction entered against defendants in April 2018 in the matter of *FTC v. Apply Knowledge et al.*, Case No. 2:14cv-00088 (the "*Apply Knowledge* case").

However, other than the Government's assertion that such violations occurred, it provides no proof other than the allegations in the indictment, which remain unproven. These allegations must be questioned given that the FTC has not taken any action during the 4 ½ years since the injunction was entered in the *Apply Knowledge* case to notify defendants of alleged non-compliance or to prove contempt. If Mr. Gannuscia had truly violated the order every day since 2018, as the Government alleges, one would expect the FTC (which was very aggressive vis-à-vis defendants in that matter) to have raised such issues and the FTC's failure to take any such action should cast serious doubt on the reliability of such allegations.

Counsel also respectfully submits that Mr. Gannuscia's conduct in the *Apply Knowledge* case further supports the notion that he is NOT a flight risk in this case. The FTC filed the *Apply Knowledge* case in 2014 against a number of defendants, including Mr. Gannuscia. Mr. Gannuscia did not default or fail to appear but vigorously contested the FTC's allegations. The parties litigated that case for more than 4 years (there are nearly 400 docket entries in that case),

until Defendants exhausted their resources and were forced to settle in 2018. Mr. Gannuscia similarly intends to defend himself in this matter. [3]

   5. *Financial Resources*

The Government also asserts that "Gannuscia's access to hidden assets and money offshore make him a serious flight risk". Gov. Position at 6. The Government supports this allegation by reference to an offshore trust or LLC. Counsel requested any evidence supporting such allegation but has not received any such evidence.

Without such evidence, it is difficult for counsel to respond to the allegation. However, counsel believes that the trust to which the Government refers predates the FTC action and was disclosed in connection with the settlement in the *Apply Knowledge* case. If so, any such assets cannot accurately be described as "hidden".

Moreover, many defendants in white collar cases have financial resources. That fact does not make them unmanageable risks of flight. Any such risk can effectively be managed through conditions such as Mr. Gannuscia surrendering his passport, requiring that he receive permission before leaving the State of Utah, and regular reporting to a pretrial officer. This is the least restrictive set of conditions required to manage the minimal risk of non-appearance.

---

[3] It should also be noted that although the Governmment implies misconduct as a result of the *Apply Knowledge* case, the injunction made no finding of wrongdoing by Mr. Gannuscia (or any other defendant). Paragraph 3 of the injunction provides:

> 3. The Essent Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

B. <u>Nature of the Offenses and Weight of the Evidence</u>

Mr. Gannuscia is charged with varying counts of wire fraud, bank fraud, and money laundering in violation of 18 U.S.C. § 1343, 1349, 1956, and 1957. As the Government concedes, none of the charged offenses fall into the category of offenses that create a presumption of detention. PSR at 4. All of these offenses are also non-violent.

Although the quantity of evidence involved in the case is substantial, the quality of that evidence remains unclear as Mr. Gannuscia has not been given access to any of it. Mr. Gannuscia requested that the Government provide any evidence that it had supporting the contention that money has been moved offshore and is available to Mr. Gannuscia. The Government has provided no such evidence and Mr. Gannuscia submits that its bare allegations, which remain unproven, are not sufficient to meet the Government's burden.[4]

**III. Pre-Trial Release is Required to Ensure an Adequate Defense in this Matter to and Allow Mr. Gannuscia to Assist in Trial Preparation and His Own Defense.**

As indicated above, this Court may order the temporary release of a person in custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or ***for another compelling reason.***" § 3142(i) (emphasis added). Here, releasing Mr. Gannuscia prior to his trial would greatly assist defense counsel in trial

---

[4] The allegation that millions of dollars may have been moved off-shore, which is made several times in the Indictment, appears to reveal a fundamental misunderstanding of the evidence in this case. Given the duties of U.S. financial institutions to "Know Your Customer" and file Suspicious Activity Reports, those institutions require invoices and other justification for payments to foreign entities. The evidence in the possession of the Government should indicate that payments to international companies were for invoiced services and not merely to move money offshore. Based on this allegation, but without having the opportunity to review the evidence, it does not appear that the allegations in the Indictment are strongly supported by the evidence.

preparation. As the United States has made clear, the case against Mr. Gannuscia involves terabytes of data—terabytes that will need to be analyzed and understood by Mr. Gannuscia's counsel with the assistance of Mr. Gannuscia. Given the quantity of data, counsel believes that Mr. Gannuscia's assistance will be required in order to provide a sufficient defense. Given conditions at local jails, release is also required to allow Mr. Gannuscia to participate in his own defense. *See United States v. Davis*, No. ELH-20-09, 2020 WL 1529158, *7 (D. Md. Mar. 30, 2020) ("[T]here is no substitute for a face-to-face, in-person, contact meeting between an attorney and his client.")

## CONCLUSION

For the foregoing reasons, Mr. Gannuscia respectfully requests that he be released with appropriate conditions, which will protect the community and ensure his appearance in this matter.

DATED this 15th day of December, 2022.

**KUNZLER BEAN & ADAMSON, PC**

*/s/ Matthew R. Lewis*
Matthew R. Lewis
Taylor J. Hadfield

*Attorneys for Defendant Phillip Gannuscia*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of December, 2022, I filed a true and correct copy of the foregoing **DEFENDANT PHILLIP GANNUSCIA'S OPPOSITION TO GOVERNMENT'S POSITION REGARDING DETENTION** and served it via the Court's electronic filing system on all parties.

*/s/ Kiersten Slade*
Kiersten Slade